878 So.2d 603 (2004)
The GRAY INSURANCE COMPANY
v.
OLD TYME BUILDERS, INC. and Zurich Insurance Companies
No. 2003 CA 1136.
Court of Appeal of Louisiana, First Circuit.
April 2, 2004.
Writ Denied June 18, 2004.
*604 Robert L. Baudouin, Metairie, Counsel for Plaintiff/Appellant The Gray Insurance Company.
Andrew A. Braun, Michelle L. Corrigan, New Orleans, Counsel for Defendants/Appellees Old Tyme Builders, Inc.
Terrence L. Brennan, Keith J. Bergeron, New Orleans, Counsel for Third-Party Defendant/Appellee Morton Verges Architects.
Temple A. Stephens, Metairie, Counsel for Defendant/Appellee Assurance Company of America.
Before: PETTIGREW, DOWNING, and McCLENDON, JJ.
MCCLENDON, J.
In this construction case, the issue raised on appeal is whether a general contractor's liability insurer is prohibited from seeking reimbursement from the general contractor's subcontractor for damages paid due to the subcontractor's alleged faulty workmanship and/or negligence. The trial court found that the existence of a waiver of subrogation clause in the contract between the general contractor and the building owner acts to preclude recovery *605 and granted summary judgment, dismissing the plaintiff's suit. For the following reasons, we affirm.
On August 31, 1995, Discon Law Firm entered into a written contract with Morton Verges Architects for the construction of a new office building in Mandeville, Louisiana. On February 28, 1996, Discon Law Firm and Grimaldi Construction, Inc. (GCI) entered into a construction contract for the actual construction of the building. Subsequently, GCI entered into a subcontract with Old Tyme Builders, Inc. for the installation of the stucco finish on the building.
GCI issued a certificate of substantial completion on or around June 24, 1996, a few weeks after Discon Law Firm began moving into the building. The building was fully occupied at or immediately after substantial completion. Prior to the issuance of the certificate of completion and throughout the fall of 1996, the building and its contents allegedly sustained water damage during normal rainfalls. During this period, GCI was insured by a liability policy issued by Gray Insurance Company.
Jim Willie, superintendent for Old Tyme Builders admitted to August Grimaldi, president of GCI, that some work performed by Old Tyme Builders on the Discon building was defective in that the metal lathe system was improperly installed. This improper installation caused water infiltration into the interior of the building and damaged various components of the interior, including walls and carpets. Old Tyme Builders replaced the stucco at its expense. GCI initially bore the expense of the consequential damages that resulted from the water leaks, such as carpet cleaning and the replacement of walls. Subsequently, Gray Insurance Company reimbursed GCI for the damages caused by the defective work.
On August 31, 1999, Gray Insurance Company, as subrogee to the rights of its insured, GCI, filed a petition for damages against Old Tyme Builders and its insurer, Assurance Company of America,[1] seeking reimbursement for the payments made to GCI. Old Tyme Builders filed a third party demand against Morton Verges Architects.
Old Tyme Builders and Assurance Company of America also filed motions for summary judgment, contending that a waiver of subrogation clause in the contract between GCI and Discon Law Firm precluded recovery by Gray Insurance Company. Morton Verges Architects also filed a motion for summary judgment. After a hearing on the motions, the trial court rendered summary judgment against Gray Insurance Company, dismissing its lawsuit with prejudice. Gray Insurance Company appeals.
It is well settled that the appellate review of summary judgment is de novo, applying the same standard as the trial court. Guillory v. Interstate Gas Station, 94-1767, p. 5 (La.3/30/95), 653 So.2d 1152, 1155. Furthermore, the rules concerning the interpretation of insurance contracts are set forth by the Louisiana Supreme Court in the case of Crabtree v. State Farm Insurance Co., 93-0509 (La.2/28/94), 632 So.2d 736, 741 (footnotes omitted), as follows:
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 93-0911 p. 5 (La.1/14/94), 630 So.2d 759, 763; Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Schroeder v. Board of *606 Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991). If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. Smith, 611 So.2d at 1379; Central La. Elec. Co. v. Westinghouse Elec. Corp., 579 So.2d 981, 985 (La.1991); Pareti v. Sentry Indem. Co., 536 So.2d 417, 420 (La.1988); see La.Civ.Code art.2046. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Interstate, 93-0911 p. 5, 630 So.2d at 763; Fertitta v. Palmer, 252 La. 336, 211 So.2d 282, 285 (1968). The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. Westinghouse, 579 So.2d at 985; Pareti, 536 So.2d [at] 420; see La.Civ.Code art.2050. If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured. Interstate, 93-0911 p. 6, 630 So.2d at 764; Smith, 611 So.2d at 1379; Pareti, 536 So.2d at 420; see La.Civ.Code art.2056.
The construction contract entered into between Discon Law Firm and GCI is a standard form contract drafted by the American Institute of Architects. The entire contract is entitled "Standard Form of Agreement Between Owner and Contractor." The pertinent provisions of the contract entered into between Discon Law Firm and GCI are as follows:

11.3 Property Insurance
11.3.1 Unless otherwise provided, the owner shall purchase and maintain... property insurance in the amount of the initial Contract Sum ... for the entire Work at the site on a replacement cost basis without voluntary deductibles. Such property insurance shall be maintained ... until final payment has been made as provided in Paragraph 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Paragraph 11.3 to be covered, whichever is earlier. This insurance shall include interests of the owner, the Contractor, Subcontractors and Sub-subcontractors....
11.3.1.1 Property insurance shall be on an all-risk policy form and shall insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, false work, temporary buildings, and debris removal including demolition occasioned by enforcement of any applicable legal requirements, ....
11.3.7 Waivers of Subrogation. The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of *607 them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.
It is undisputed that Gray Insurance Company is subrogated to the rights of GCI, its insured. Louisiana Civil Code article 1825 defines the term "subrogation" as the substitution of one person to the rights of another. A subrogee acquires no greater rights than those possessed by its subrogor and is subject to all limitations applicable to the original claim of the subrogor. Travelers Ins. Co. v. Impastato, 607 So.2d 722, 724 (La.App. 4 Cir.1992); State v. U.S. Fidelity & Guar. Co., 577 So.2d 1037, 1039 (La.App. 4 Cir.1991). Therefore, the fate of Gray Insurance Company's claim is dependent on the interpretation of the subrogation clause quoted above.
On appeal, Gray Insurance Company asserts that the waiver of subrogation does not apply herein for four reasons: (1) the insurance was provided by the general contractor, not the owner, and the waiver of subrogation does not apply to claims by the general contractor against its own subcontractors; (2) the damages were not caused by a "fire and peril;" (3) the waiver only applies to property insurance, not liability insurance; and (4) Old Tyme Builders waived the waiver of subrogation by voluntarily remedying its work.
Initially, Gray Insurance Company contends that pursuant to paragraph 11.3.7, the general contractor did not waive subrogation against its own subcontractors, only against subcontractors of the owner. Therefore, GCI did not waive subrogation against Old Tyme Builders. We disagree.
As discussed above, an insurance policy must be construed as a whole. LSA-C.C. art.2050. It should be interpreted in a reasonable manner without enlarging or restricting its provisions beyond what is reasonably contemplated by its terms. Crabtree, 632 So.2d at 741. Paragraph 11.3.7 provides that the "Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other.... The Owner or Contractor, as appropriate, shall require of the Architect, ... subcontractors, sub-subcontractors, agents and employees of any of them ... similar waivers each in favor of other parties enumerated herein." Clearly, paragraph 11.3.7 operates as a waiver of rights of the owner and the contractor against subcontractors and other workers on the project for property damage to the extent that such damages are covered by insurance. By these terms, the waiver of subrogation provisions are reciprocal, with no exception for claims by the owner or contractor against their own subcontractors.
Gray Insurance Company next asserts that the subrogation clause does not apply as the damages were not caused by a "fire or other peril" as required by paragraph 11.3.7. In support of this argument, it asserts that he term "peril" is an occurrence that is dramatic in nature as opposed to an everyday occurrence such as a rainstorm.
Finding no specific definition for the term "peril" in the insurance contract, we turn to Black's Law Dictionary 1059 (7th *608 ed.1999), which defines the term "peril" as an "[e]xposure to the risk of injury, damage, or loss." Black's further defines the term "peril," when used in the context of insurance contracts, as "[t]he cause of a loss to a person or property." This definition is consistent with the definition of the term applied in some other jurisdictions. See Indep. Sch. Dist. 833 v. Bor-Son Constr., Inc., 631 N.W.2d 437 (Minn.Ct.App.2001); Blue Cross v. McDevitt & Street Co., 234 Va. 191, 360 S.E.2d 825 (Va.1987); Len Immke Buick, Inc. v. Architectural Alliance, 81 Ohio App.3d 459, 611 N.E.2d 399 (1992). Herein, ordinary rainstorms caused the loss suffered. Therefore, applying the above definitions, each rainstorm constituted a peril. Thus, the property damage to the Discon building was caused by a peril within the meaning of paragraph 11.3.7, the waiver of subrogation clause.
Additionally, Gray Insurance Company asserts that its policy is not the type of policy described in Paragraph 11.3.1.1 as an "all risk" policy normally in effect during construction work in-progress. Gray Insurance Company contends that its policy is not subject to the waiver of subrogation clause because it is a "liability" policy, rather than a "property" policy.
By its terms, the waiver of subrogation applies to two types of property insurance. The subrogation clause provides that "damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work" are covered. This provision applies to any property damage covered by insurance that was in effect during the time period required by paragraphs 11.3.1 and 11.3.7. See Travelers Ins. Co. v. Impastato, 607 So.2d 722, 724 (La.App. 4 Cir.1992); State v. U.S. Fidelity & Guar. Co., 577 So.2d 1037, 1039 (La.App. 4 Cir.1991). Gray Insurance Company's policy covered and paid for the property damage at issue. Clearly, Gray Insurance Company's policy provided "other property insurance applicable to the work."
Furthermore, paragraph 11.3.1 requires that property insurance be maintained until at least final payment or until no one other than the owner has an insurable interest in the building. Until final payment, GCI clearly retained an insurable interest despite substantial completion. It is undisputed that this damage occurred before final payment. Therefore, whether the property damage occurred before or after substantial completion is immaterial.
Finally, Gray Insurance Company asserts that Old Tyme Builders voluntarily replaced the defective stucco installation, completely remedying the problem at its own expense, and such action constitutes a waiver of the waiver of subrogation. We reject this assertion. "Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." Steptore v. Masco Const. Co., Inc., 93-2064, p. 4 (La.8/18/94), 643 So.2d 1213, 1216. Old Tyme Builder's voluntary action of undertaking repairs cannot be considered a knowing and intentional relinquishment of a known right, power, or privilege, or as actions so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished, as required by law to constitute a waiver.
For the foregoing reasons, we affirm the judgment of the trial court. Costs are assessed against the appellant, Gray Insurance Company.
AFFIRMED.
NOTES
[1] Sometimes referred to herein as Zurich Insurance Company.